United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RAMIN YEGANEH,<br><br>    Debtor.<br>_____/<br><br>RAMIN YEGANEH,<br><br>    Appellant,<br><br>  v.<br><br>CHARLES E. SIMS, Trustee in Bankruptcy,<br><br>    Appellee.<br>_____/ | No. C 06-2788 CW<br><br>ORDER DENYING APPELLANT'S EMERGENCY MOTION FOR STAY OF ORDER AUTHORIZING COMPROMISE |

    Appellant Ramin Yeganeh has filed an emergency motion for a stay of the bankruptcy court's final order authorizing a compromise. Trustee Charles E. Sims and Creditors Hari and Krishna Chand et al.[1] oppose the motion for a stay. The motion was taken

---

[1] In addition to the Chands, those referred to collectively as Creditors are Shalen Lachen; Katherine and Webster Loudd; George Porter; Willie Roberson; Sione and Senolita Tuipulotu; Cheryl Dockery; Roy C. and Rose Lyllian F. Piedot; Lucy Mae Pickens; Maliaeme and Latanoa Lauese; Adolphurs and Nadine Turner; Gloria Penney; Joe L. Jackson and Joannah Jackson; Yolanda Jackson; Phillip Alarcon; Gwendolyn Penney; Samuel and Joan Trail; Barbara A. Wright and Kenneth Hearne, Sr.; Pamela Gene Helvie; Second

under submission on the papers. Having considered the papers filed by the parties, the Court denies Appellant's emergency motion for a stay pending his appeal of the bankruptcy court's order.

## BACKGROUND

The genesis of this dispute is a lawsuit filed on October 4, 1999 against Appellant in San Mateo County Superior Court, <u>Ingram v. Yeganeh</u>, No. 410586. Plaintiff Edith Ingram sued on her own behalf, and plaintiff Nozipo Wobogo sued on behalf of the general public, pursuant to the former "private attorney general" clause of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 <u>et seq.</u> The plaintiffs accused Appellant of unlawful loan brokerage practices. Ms. Ingram settled her claims against him on April 25, 2001.

On June 3, 2004, after a series of hearings on the Creditors' individual claims, Temporary Judge John S. Blackman issued a judgment against Appellant and ordered restitution to the Creditors in the amount of $270,000. The parties stipulated that no post-judgment interest would accrue on the June 3, 2004 judgment "until after the court has heard and rule upon plaintiffs' motion for award of attorney's fees and costs, any sanctions motion(s) plaintiffs may bring along with the fee motion, and any motion for permanent injunction that plaintiffs may bring . . ." Yeganeh Reply Decl., Ex. F, June 16, 2004 Order on Stipulation Re Accrual of Post-Judgment Interest. The stipulation further provided that

---

Baptist Church of Fowler; Doroteo Magana; Yolanda Segura and Rose Rivera; Henry Stevens; Lula Jackson-Christian; William Lee Beasley II; Cleo Carey; Leonard, Cecil and Yvette Williams; and Romeo Mabutas and Fely Mabutas.

2

"[o]nce the above-referenced rulings have been made, the June 3, 2004 judgment will be amended to include any further amounts adjudicated to be owed by any party hereto." Id.

Ms. Wobogo moved pursuant to California Civil Procedure Code § 1021.5 for an award of attorneys' fees and costs incurred by her counsel, DLA Piper Rudnick Gray Cary US LLP (Gray Cary). On September 9, 2004, Judge Blackman awarded approximately $3.5 million in attorneys fees (including $2.3 million in principal with a 1.5 multiplier) and $32,000 in costs against Appellant, as well as prejudgment interest of approximately $130,000, for a total judgment of $3.9 million. He found that the attorneys' work resulted in the enforcement of important rights affecting the public interest, explaining that

> [t]he amounts of money restored to individuals through plaintiff attorneys' work may not seem like much to defendant, but these are highly significant sums of money to many of the claimants, many of whom live very modestly. Plaintiff attorneys' actions in prosecuting this suit have also prevented a large number of members of the public from falling victim to the same practices as the named claimants hereing, though the vigorous prosecution of this lawsuit as well as by way of obtaining injunctions.

Creditors' Request for Judicial Notice (hereinafter RJN), Ex. B, September 9, 2004 Order Re Award of Attorney's Fees, Costs, Prejudgment Interest and Related Findings at 2. He found that private enforcement here was necessary, risky, and imposed a heavy financial burden on the lawyers who performed the services. He further found,

> The factual and legal questions involved in this case were novel and difficult. The complexity of the case, together with defendant's evasive and obstreperous conduct as outlined in several of the previous orders issued in this case made this case more time-consuming for plaintiffs' attorneys than

3

> it otherwise might have been . . . . [D]efendant has presented no compelling, specific evidence that shows that plaintiffs overworked this case or did not legitimately spend the amount of hours they are claiming they spent. The Court finds that the time expended by plaintiffs' counsel in terms of manning their case was reasonable under the difficult circumstances of this case. . . . The Court has also taken into account the fact that plaintiffs' attorneys and staff spent many hours for which they are not seeking reimbursement, as stated in plaintiffs' moving papers.

Id. at 2-3.

Appellant timely appealed the State court judgments against him. On November 2, 2004, the California electorate passed Proposition 64, which amended the UCL to eliminate the ability of private individuals to bring actions on behalf of the general public. The UCL now requires a private plaintiff seeking to bring an action for injunctive or restitutionary relief to establish that he or she "has suffered injury in fact and has lost money or property." Cal. Bus. & Prof. Code § 17204.

Proposition 64 was silent on the question of whether these new standing requirements should be applied to pending cases. In order to ensure the validity of the restitutionary judgment against Appellant, the Creditors moved to intervene as plaintiffs. The State court granted the motion to intervene on January 7, 2005.

According to Appellant, the judgment against him, including attorneys' fees and costs, is more than his net worth, which is primarily comprised of real estate. Appellant filed a petition for Chapter 13 bankruptcy on January 7, 2005. On January 21, 2005, the bankruptcy court granted the Creditors' motion to convert the case to Chapter 7, and appointed Mr. Sims as Trustee. The bankruptcy court later denied Appellant's motion for reconsideration of the

4

conversion.

After the case was converted to Chapter 7, the bankruptcy court solicited the filing of proofs of claim. The Creditors filed a total of $4.7 million in claims, and other creditors filed approximately $800,000 in claims. In addition to the restitutionary judgment, attorneys' fees and costs awarded by the State court in <u>Ingram</u>, and interest thereon, the Creditors filed claims for approximately $800,000 in post-judgment attorneys' fees and $39,000 in post-judgment costs incurred between August 1, 2004 and January 7, 2005. The Creditors also claimed a 1.5 multiplier on this prospective post-judgment fee award.

Appellant asked the bankruptcy court for a stay in order to allow his appellate counsel to pursue his State civil appeals. His motion for a stay was denied on December 5, 2005.

On February 17, 2006, the Trustee filed a notice of intent to compromise with the Creditors. He negotiated with the Creditors for a $200,000 reduction in the principal attorneys' fees claim and a corresponding $100,000 in the multiplier. The Creditors also agreed that the reduced attorneys' fee award "will be treated as a general unsecured claim on par with all other general unsecured claims and the multiplier claim will receive a distribution only after those general unsecured claims are paid in full." RJN, Ex. 210, Notice of Trustee's Intent to Dismiss Appeals and Compromise with Creditors at 2. Appellant's estate would still owe the Creditors and their attorneys more than $4.1 million. In exchange, the Trustee agreed to dismiss Appellant's civil State court appeals.

5

The bankruptcy court held a hearing on the proposed compromise on March 31, 2006, as well as Appellant's motion to compel the Trustee to abandon the civil appeals so that he could prosecute them. At the hearing, the parties addressed extensively the legal issues at stake in the underlying State court action. The Creditors later submitted supplemental briefing on issues relating to their intervention in the underlying State lawsuit. The bankruptcy court issued stated its findings of fact and conclusions of law on the record at an April 5, 2006 telephonic hearing. Although Judge Carlson concluded that the California Supreme Court likely would find Proposition 64 to be retroactive, but not in a way that would require reversal of judgments where plaintiffs could have met its more stringent pleading requirements if they had known of them at the time of trial. He found that the plaintiffs in Ingram likely could have met Proposition 64 requirements had they known of them from the outset. He also found that any retroactive effect of Proposition 64 would be unlikely to affect the attorneys' fees award in this case. He noted the very deferential standard of review applied to attorneys' fee awards.

In evaluating the fairness of the Trustee's proposed compromise, Judge Carlson described the costs of going forward with the litigation as a "very powerful factor in this case" that "strongly bolstered" the appropriateness of the settlement. Apr. 5, 2006 Hr'g Tr. 7:21-24. He found that proceeding with Appellant's State civil appeals would be "unusually costly," not cost effective, and would entail substantial delay, which in turn would further increase the costs to the estate as the post-judgment

6

1  interest costs increased.  Finally, he found that the views of the
2  creditors favored approval of settlement.
3      On April 17, 2006, Appellant moved the bankruptcy court for a
4  stay of enforcement of the compromise pending resolution of its
5  authorization.  This motion was denied on April 28, 2006; however,
6  the court issued a temporary stay until May 12, 2006, in order to
7  allow this Court to hear Appellant's emergency motion.

## REQUEST FOR JUDICIAL NOTICE

The Creditors request that the Court take judicial notice of various documents from the State court proceedings as well as portions of the record before the bankruptcy court.  Appellant opposes the request and moves to strike the documents on the grounds that he did not receive them by fax in accordance with the parties' stipulated briefing schedule, and thus has not had a chance to review them.  However, the documents are all copies of previous court filings and are too voluminous to be faxed.  Because these documents are all court filings whose authenticity may be easily checked against the public record, the Court grants the Creditors' request for judicial notice.  To the extent that Appellant disputes the authenticity of any of the documents, he may file an administrative motion to correct the docket accordingly.

## LEGAL STANDARD

The parties agree that Appellant is requesting a discretionary stay, for which the applicable standard is

1. Appellant is likely to succeed on the merits of the appeal.
2. Appellant will suffer irreparable injury.
3. No substantial harm will come to appellee.
4. The stay will do no harm to the public interest.

7

In re Wymar, 5 B.R. 802, 806 (9th Cir. 1980) (relying on Schwartz v. Covington, 341 F.2d 537 (9th Cir. 1965)).[2]  The party seeking a stay must satisfy each of these elements.  In re Irwin, 338 B.R. 839, 843 (E.D. Cal. 2006).  If a debtor posts a bond that fully protects the appellees, then neither probable success nor irreparable injury need be shown.  In re Wymer, 5. B.R. at 806.

"A motion for a stay of the judgment, order, or decree of a bankruptcy judge . . . must ordinarily be presented to the bankruptcy judge in the first instance."  Fed. R. Bankr. P. 8005.  "When a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion."  In re Irwin, 338 B.R. at 843 (quoting Universal Life Church v. United States, 191 B.R. 433, 444 (E.D. Cal. 1995)).

                                DISCUSSION

I.   Likelihood of Success

     A.   Applicable Law

     In order to determine the "fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of

---

[2] Appellant suggests that if he establishes that the balance of harms is in his favor, he need only establish substantial and serious questions regarding the merits of his appeal. See In re Skinner, 202 B.R. 867, 869 (W.D. Va. 1996) (applying a preliminary injunction standard to review of bankruptcy court's denial of a stay). Appellant cites no in-circuit authority on this point. For the reasons described below, the question is moot because Appellant has demonstrated neither a likelihood of success nor substantial and serious questions regarding the merits of his appeal.

8

>collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) (quoting in part In re Flight Transp. Corp. Sec. Litig., 730 F.2d 1128, 1135 (8th Cir. 1984)).

The bankruptcy court's order "approving the trustee's application to compromise the controversy is reviewed for an abuse of discretion." Id. at 1380. "[A]s long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." Id. at 1381.

B. Analysis

In his original motion, Appellant argues that the approval of the Trustee's compromise is unfair, but does not identify any particular factor that the bankruptcy court failed to consider or otherwise explain how its decision as an abuse of discretion. Generally, the Court finds that the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, and its decision can be affirmed on that ground.

In his reply, Appellant clarifies three issues decided by the bankruptcy court which he argues constitute an abuse of discretion: (1) the inclusion of Creditors' claim for post-judgment attorneys' fees and costs; (2) the inclusion of Creditors' restitution awards; and (3) application of the post-judgment interest rate of 10% to the prejudgment interest award and the $270,000 judgment. The Court examines these issues in more detail to see if there is any

9

reason to believe that the bankruptcy court abused its discretion.

### 1. Post-Judgment Fees and Costs

Appellant maintains that the bankruptcy court abused its discretion by including the Creditors' claim for post-judgment attorneys' fees and costs in its evaluation of the compromise. He characterizes these claims as "imaginary and fraudulent" because they have not been approved by a court. However, Appellant does not make any specific factual showing that the Creditors' attorney inflated either the number of hours or their hourly rate in their claim for post-judgment fees. Appellant's characterization of the post-judgment attorneys' fee claim as uncollectible must rest on an assumption that he will either win his civil appeals or, if he lost, that the State court would refuse to award the Creditors post-judgment attorneys' fees. However, Appellant provides no support for either of these assumptions. Therefore, the Court finds that the bankruptcy court did not abuse its discretion by considering the Creditors' post-judgment fee claims to be collectible and enforceable against the estate.

### 2. Creditors' Restitutionary Judgment

Appellant appears to argue that the bankruptcy court abused its discretion by misjudging his probability of success in the underlying State civil litigation.

The California Supreme Court has granted review on the question of whether Proposition 64. See, e.g., Californians for Disability Rights v. Mervyn's, LLC, previously published at 126 Cal. App. 4th 386 (2005), rev. granted, (Apr. 27, 2005). This Court held last year that the California Supreme Court would likely

10

apply Proposition 64 retroactively to pending cases. Chamberlan v. Ford Motor Co., 369 F. Supp. 2d 1138, 1149-51 (N.D. Cal. 2005). A related question which the California Supreme Court will decide is whether, and if so how, a plaintiff may cure pleading deficiencies caused by the passage of Proposition 64.

Appellant fails to establish that the bankruptcy court abused its discretion by deciding that the California court likely would apply Proposition 64 retroactively, but would not do so in a way that would endanger the judgment in the underlying action here. As the bankruptcy court noted, this case presents an unusual circumstance in that, prior to the passage of Proposition 64, the State court entered judgment granting particular restitutionary awards after hearing evidence relating to each named Creditor. Appellant has not cited any State case that could persuasively be applied to preclude claimants who have already shown injury from intervening as plaintiffs after the passage of Proposition 64. Cf., e.g., Benson v. Kwikset Corp., previously published at 126 Cal. App. 4th 887 (2005), (holding that new plaintiffs could not be substituted after Proposition 64 because their new attempt to prove their own injury and loss would be overcome by the statute of limitations). Therefore, the Court finds that the bankruptcy court did not err in concluding that regardless of how the California Supreme Court resolves the questions relating to Proposition 64, the judgment against Appellant will likely stand.

Appellant also asserts that even if the California Supreme Court did not hold Proposition 64 to be retroactive, "the attorney's fee award of $3.5 million would still be likely to

11

1  fall." However, Appellant shows no basis whatsoever for this
2  assertion, or for his claim that the bankruptcy court abused its
3  discretion by disagreeing with this assessment. Indeed, as noted
4  by Appellant's appellate counsel, Dell'Ario Decl. ¶ 10, attorneys'
5  fee awards are generally reviewed for abuse of discretion.
6      For these reasons, the Court finds that the bankruptcy court
7  did not abuse its discretion in evaluating the strength of the
8  Creditors' claims for restitution and attorneys' fees.
9                3.   Post-Judgment Interest Rate
10     Finally, Appellant argues that the bankruptcy court abused its
11 discretion in approving claims that included post-judgment
12 interest. He points to the June 16, 2004 stipulation approved by
13 the State court providing that post-judgment interest would not
14 accrue until the court had ruled on plaintiffs' motion for award of
15 attorneys' fees and costs and any motions brought for sanctions or
16 a permanent injunction. Appellant argues that because plaintiffs
17 brought a motion for sanctions that was not ruled on, any award of
18 post-judgment interest is invalid.[3]
19     Appellant has not shown that the bankruptcy court abused its
20 discretion in approving a compromise that included post-judgment
21 interest. The parties' stipulation sought only to toll briefly the
22 accrual of post-judgment interest. Most, if not all, of the
23 motions referred to in the stipulation were ruled on, making an

---

[3]This argument was raised for the first time in Appellant's reply memorandum, and neither the Trustee nor the Creditors have had an opportunity to respond. Indeed, this particular argument also was not raised in Appellant' brief before the bankruptcy court. See RJN, Ex. 222, Debtor's Objection to Trustee's Notice of Intent to Dismiss Appeals and Compromise with Creditors at 10-17.

12

1  award of post-judgment interest timely and appropriate.
2  Furthermore, Appellant provided no documentation for his assertion
3  that a motion for sanctions is still pending; such a motion may
4  well have been mooted by the order awarding attorneys' fees.

                    4.  Other A & C Properties Factors

6      Appellant further undermines any claim that the bankruptcy
7  court abused its discretion by failing to analyze the other A & C
8  Properties factors which the bankruptcy court weighed heavily in
9  making its decision.  Appellant intends to pursue complex
10 litigation with little likelihood of success, which will
11 necessarily cause further expense and delay.  Nor does Appellant
12 acknowledge the paramount interest of his creditors and a proper
13 deference to their views in his critique of the bankruptcy court's
14 decisions.
15     In sum, Appellant has established neither a likelihood of
16 success nor a serious and substantial question on the merits of his
17 appeal.  On this ground alone, the Court finds that he is not
18 entitled to a discretionary stay.
19 II.  Other Factors
20     The Court agrees that Appellant has shown irreparable harm if
21 a stay is not granted; the approval of the compromise will finally
22 end his State civil appeals.  However, Appellant overstates the
23 harm at stake by identifying the potential loss of his residence as
24 "irreparable injury."  As the Trustee notes, Appellant may remain
25 in his home pending appeal; therefore, the potential loss of his
26 home was not relevant to the bankruptcy court' decision to deny a
27 stay.  Cf. In re Skinner, 202 B.R. at 869 (finding that debtor who

13

would lose his residence had clearly established irreparable harm). Appellant maintains that the sale of his other real property holdings would cause him irreparable injury, but he provides no support for this assertion.

The harm to the public interest factor also does not mitigate against a stay. Although the underlying State action (including the award of attorneys' fees) clearly vindicates public interests, the interests at stake in Debtor's motion for an emergency stay are personal rather than public.

However, Appellant has failed to meet his burden to show that the bankruptcy estate and its creditors would not be harmed by a stay. In fact, the evidence shows that certain of the Creditors would suffer serious harm if a stay were granted. According to the Creditors' attorney's declaration, some now face serious health and financial challenges. Ms. Chand is in "extremely poor" health; the Chands had to obtain ex parte relief to remove Appellant's lien on their home (which remained there pending judgment and Appellant's attempts to disqualify Temporary Judge Blackman due to bias). Chantler Decl. ¶ 6. Mr. Hearne is unemployed and homeless, and therefore is in immediate need of his restitutionary award. Id. ¶ 7. Ms. Turner is facing foreclosure on her home, and also is in urgent need of funds. Id. ¶ 8. For these Creditors, the delay caused by a stay while this case is appealed will likely cause irreparable harm. Appellant insists that the Trustee could avoid harm by simply paying off these Creditors' $270,000 restitutionary judgment, but this approach could harm other creditors and is inconsistent with the usual administration of bankruptcy estates.

14

This harm is an additional reason why the Court will not grant Appellant's motion for a stay.

## CONCLUSION

For the reasons described above, the Court DENIES Appellant's emergency motion to stay bankruptcy proceedings (Docket No. 3).

IT IS SO ORDERED.

Dated: 5/12/06

CLAUDIA WILKEN
United States District Judge

15

1  UNITED STATES DISTRICT COURT
   FOR THE
2  NORTHERN DISTRICT OF CALIFORNIA

3
   IN RE:RAMIN YEGANEH,
4                                              Case Number: CV06-02788 CW
           Plaintiff,
5                                              **CERTIFICATE OF SERVICE**
     v.
6
    et al,
7
           Defendant.
8  _____/

9
   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court,
10 Northern District of California.

11 That on May 12, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies)
   in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in
12 the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's
   office.
13

14

15 U.S. Bankruptcy Manager
   U.S. Bankruptcy Court
16 235 Piine St.
   P.O. Box 7341
17 San Francisco, CA 94120-7341

18 Charles Patrick Maher                       e-mailed via ecf
   Luce Forward Hamilton & Scripps LLP
19 121 Spear Street
   Suite 200
20 San Francisco, CA 94105

21 Evan R. Sorem                                e-mailed via ecf
   401 B Street
22 Suite 1700
   San Diego, CA 92101

23
   Julie Glosson
24 235 Pine St.
   Suite 700
25 San Francisco, CA 94105

26 Thomas E. Carlson
   United States Bankruptcy Court in San Francisco
27 235 Pine St.

28
                                          16

1  P.O. Box 7341
   San Francisco, CA 94120-7341
2
3  William E. Gilg                                     e-mailed via ecf
   Attorney at Law
   305 San Bruno Avenue West
4  San Bruno, CA 94066

5  Dated: May 12, 2006
                                                Richard W. Wieking, Clerk
6                                               By: Sheilah Cahill, Deputy Clerk