United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RAMIN YEGANEH,<br><br>    Debtor.<br>_____<br>RAMIN YEGANEH,<br><br>    Appellant,<br><br>  v.<br><br>CHARLES E. SIMS, Trustee in Bankruptcy,<br><br>    Appellee.<br>_____/ | No. C 06-2788 CW<br><br>ORDER AFFIRMING THE ORDER OF THE BANKRUPTCY COURT<br><br>Bankruptcy No. 05-30047 TEC |

    Appellant has appealed from the bankruptcy court's "Order Authorizing Compromise" (Docket No. 30).  Having considered all of the papers filed by the parties, the Court AFFIRMS the order of the bankruptcy court.

BACKGROUND

The genesis of this dispute is a lawsuit filed on October 4, 1999 against Appellant in San Mateo County Superior Court, <u>Ingram v. Yeganeh</u>, No. 410586. Plaintiff Edith Ingram sued on her own behalf, and plaintiff Nozipo Wobogo sued on behalf of the general public, pursuant to the former "private attorney general" clause of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 <u>et seq.</u> The plaintiffs accused Appellant of unlawful loan brokerage practices. Ms. Ingram settled her claims against Appellant on April 25, 2001.

In March, 2001, Appellant plead no contest to four criminal counts of violating the foreclosure consultant law, California Code of Civil Procedure § 2945 <u>et seq</u>. Under California law, the pleas had the same effect as guilty pleas for purposes of other actions based on the same subject matter.

In November, 2003, Temporary Judge John S. Blackman issued an order prohibiting contact between Appellant and the individuals claiming to have been harmed by him (Plaintiffs). Appellant violated that and other court orders. He was adjudicated in contempt and jailed.

On June 3, 2004, after a series of hearings on Plaintiffs' individual claims, Judge Blackman entered judgment against Appellant and ordered restitution to Plaintiffs in the amount of $270,000. The record of these individual hearing was not transcribed. The parties to that case stipulated that no post-judgment interest would accrue on the June 3, 2004 judgment "until after the court has heard and ruled upon plaintiffs' motion for

1  award of attorney's fees and costs, any sanctions motion(s)
2  plaintiffs may bring along with the fee motion, and any motion for
3  permanent injunction that plaintiffs may bring . . ." (Yeganeh
4  Dec., Motion to Stay Bankruptcy Court's Order Authorizing
5  Compromise, Exh. F, June 16, 2004 Order on Stipulation Re Accrual
6  of Post-Judgment Interest.)  The stipulation further provided,
7  "Once the above-referenced rulings have been made, the June 3, 2004
8  judgment will be amended to include any further amounts adjudicated
9  to be owed by any party hereto."  (Id.)

10     Ms. Wobogo moved pursuant to California Code of Civil
11 Procedure § 1021.5 for an award of attorneys' fees and costs
12 incurred by her counsel, DLA Piper Rudnick Gray Cary US LLP (Gray
13 Cary).  In support of that motion, one of Ms. Wobogo's attorneys
14 declared that they had also spent time on civil and criminal cases
15 related to Ms. Wobogo's case.  (Docket No. 25, Exh. AA.)  The civil
16 cases included Evans v. Yeganeh, No. 412706, and a small claims
17 case, Yeganeh v. Raffington, No. SCS 106526.  (Id.)  Their work on
18 the criminal case, People v. Yeganeh, No. SC 46012A, involved
19 coordination of efforts between themselves and the District
20 Attorney's office. (Id.)

21     In a separate judgment, filed on September 9, 2004, Judge
22 Blackman awarded approximately $3.5 million in attorneys' fees
23 (including $2.3 million in principal with a 1.5 multiplier) and
24 $32,000 in costs against Appellant, as well as pre-judgment
25 interest of approximately $130,000, for a total of $3.9 million.
26 He found that the attorneys' work resulted in the enforcement of
27 important rights affecting the public interest, explaining that

28                                 3

> The amounts of money restored to individuals through plaintiff attorneys' work may not seem like much to defendant, but these are highly significant sums of money to many of the claimants, many of whom live very modestly. Plaintiff attorneys' actions in prosecuting this suit have also prevented a large number of members of the public from falling victim to the same practices as the named claimants herein, through the vigorous prosecution of this lawsuit as well as by way of obtaining injunctions.

(Request for Judicial Notice, Motion to Stay Bankruptcy Court's Order Authorizing Compromise, Exh. B, September 9, 2004 Order re Award of Attorney's Fees, Costs, Prejudgment Interest and Related Findings at 2.) He found that the private enforcement there was necessary, risky, and imposed a heavy financial burden on the lawyers who performed the services. He further found,

> The factual and legal questions involved in this case were novel and difficult. The complexity of the case, together with defendant's evasive and obstreperous conduct as outlined in several of the previous orders issued in this case made this case more time-consuming for plaintiffs' attorneys than it otherwise might have been . . . . [D]efendant has presented no compelling, specific evidence that shows that plaintiffs overworked this case or did not legitimately spend the amount of hours they are claiming they spent. The Court finds that the time expended by plaintiffs' counsel in terms of manning their case was reasonable under the difficult circumstances of this case. . . . The Court has also taken into account the fact that plaintiffs' attorneys and staff spent many hours for which they are not seeking reimbursement, as stated in plaintiffs' moving papers.

(Id. at 2-3.)

Appellant timely appealed the State court restitution and attorneys' fees judgments against him.

On November 2, 2004, the California electorate passed Proposition 64, which amended the UCL to eliminate the ability of private individuals to bring actions on behalf of the general public. The UCL now requires a private plaintiff bringing an action for injunctive or restitutionary relief to establish that he

4

or she "has suffered injury in fact and has lost money or property." Cal. Bus. & Prof. Code § 17204. Proposition 64 was silent on the question of whether these new standing requirements should be applied to pending cases.

In order to ensure the validity of the restitutionary judgment against Appellant, the current Plaintiffs moved to intervene. The State court granted the motion to intervene on January 7, 2005.

According to Appellant, the judgments against him are more than his net worth, which is primarily comprised of real estate. Appellant filed a petition for Chapter 13 bankruptcy on January 7, 2005. On January 21, 2005, the bankruptcy court granted Plaintiffs' motion to convert the case to Chapter 7, and appointed Charles Sims as Trustee. The bankruptcy court later denied Appellant's motion for reconsideration of the conversion.

After the case was converted to Chapter 7, the bankruptcy court solicited the filing of proofs of claims. Plaintiffs filed a total of $4.7 million in claims, and other creditors filed approximately $800,000 in claims. In addition to the restitutionary judgment, attorneys' fees and costs awarded by the State court in Ingram, and interest thereon, Plaintiffs filed claims for approximately $800,000 in post-judgment attorneys' fees and $39,000 in post-judgment costs incurred between August 1, 2004 and January 7, 2005. Plaintiffs also claimed a 1.5 multiplier on this requested post-judgment fee award.

Appellant asked the bankruptcy court for a stay of the bankruptcy proceedings in order to allow his appellate counsel to pursue his State civil appeals. His motion for a stay was denied

5

on December 5, 2005.

On February 17, 2006, the Trustee filed a notice of intent to compromise with Plaintiffs. He negotiated with Plaintiffs for a $200,000 reduction in the principal attorneys' fees claim and a corresponding $100,000 reduction in the multiplier. Plaintiffs also agreed that the reduced attorneys' fee award "will be treated as a general unsecured claim on par with all other general unsecured claims and the multiplier claim will receive a distribution only after those general unsecured claims are paid in full." (Request for Judicial Notice, Motion to Stay Bankruptcy Court's Order Authorizing Compromise, Exh. 210, Notice of Trustee's Intent to Dismiss Appeals and Compromise with Creditors at 2.) The compromise also included a $400,000 reduction in Plaintiffs' $800,342.75 claim for post-judgment attorneys' fees. Appellant's estate would still owe Plaintiffs and their attorneys more than $4.1 million. In exchange, the Trustee agreed to dismiss Appellant's State court civil appeals.

On March 31, 2006 the bankruptcy court held a hearing on the proposed compromise and Appellant's motion to compel the Trustee to abandon the civil appeals so that he could prosecute them himself. At the hearing, the parties extensively addressed the legal issues at stake in the underlying State court action. Plaintiffs later submitted supplemental briefing on issues relating to their intervention in the underlying State lawsuit. The bankruptcy court stated its findings of fact and conclusions of law on the record at an April 5, 2006 telephonic hearing. Judge Carlson concluded that the California Supreme Court likely would find Proposition 64 to be

retroactive, but would not require reversal of judgments where plaintiffs such as those here could have met its more stringent pleading requirements if they had known of them at the time of trial. He found that Plaintiffs here likely could have met the Proposition 64 requirements had they known of them from the outset. He also found that any retroactive effect of Proposition 64 would be unlikely to affect the attorneys' fees award in this case. He noted the very deferential standard of review applied to attorneys' fees awards.

In evaluating the fairness of the Trustee's proposed compromise, Judge Carlson described the costs of going forward with the litigation as a "very powerful factor in this case" that "strongly bolstered" the appropriateness of the settlement. (Docket No. 28, Transcript of Bankruptcy Court's April 5, 2006 Telephonic Hearing Authorizing Trustee's Proposed Compromise at 7.) He found that proceeding with Appellant's State civil appeals would be "unusually costly," not cost effective, and would entail substantial delay, which in turn would further increase the costs to the estate as the post-judgment interest increased. (Id. at 8.) Finally, he found that the interests of Plaintiffs favored approval of settlement. Judge Carlson also denied Appellant's motion to have his State civil appeals abandoned as property of the estate, on the grounds that the appeals are not "burdensome asset[s]." (Id. at 11.)

On April 17, 2006, Appellant moved the bankruptcy court for a stay of enforcement of the compromise pending resolution of his appeal to this Court of the order authorizing the compromise. This

7

motion was denied on April 28, 2006.  However, the court issued a temporary stay until May 12, 2006, in order to allow this Court to hear Appellant's emergency motion to stay the bankruptcy proceedings.

On May 12, 2006, this Court denied Appellant's motion for a stay of the bankruptcy court order authorizing the compromise.  The motion was denied because Appellant failed to establish either a likelihood of success or a serious and substantial question on the merits of his appeal and therefore was not entitled to a discretionary stay.  (May 12, 2006 Order at 13.)  On September 14, 2006, this Court denied Appellant's motion for leave to file a motion for reconsideration of the May 12, 2006 Order.  The Court now reviews the merits of Appellant's appeal.

## STANDARD OF REVIEW

A district court has jurisdiction to hear appeals from a bankruptcy court pursuant to 28 U.S.C. 158(a).  An order authorizing a compromise in a bankruptcy case is reviewed for an abuse of discretion.  In re A & C Properties, 784 F.2d 1377, 1380 (9th Cir. 1986).  The district court reviews the bankruptcy court's embedded findings of fact for clear error and reviews findings of law de novo.  Fed. R. Bankr. P. 8013; In re Lockard, 884 F.2d at 1174 (9th Cir. 1989).

In order to determine the "fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and

8

```
        the expense, inconvenience and delay necessarily attending it;
        (d) the paramount interest of the creditors and a proper
        deference to their reasonable views in the premises."
```

In re A & C Properties, 784 F.2d at 1381.

## DISCUSSION

Appellant argues that the bankruptcy court abused its discretion in applying the A & C Properties factors to the compromise reached between the Trustee and Plaintiffs and in approving the compromise.

I.  Probability of Success in the Litigation

   A.  Plaintiffs' Restitutionary Judgment

Appellant contends that, as a result of Proposition 64, Plaintiffs' State court judgment is sure to be reversed on appeal and the approval of the compromise dismissing his State appeals was therefore an abuse of discretion.  Specifically, Appellant argues that because Ms. Wobogo sued on behalf of the general public, she asserted a right independent from that asserted by Plaintiffs.  Therefore, he argues, Plaintiffs' claims will not relate back to those alleged in the original complaint but rather will be time-barred by the UCL's four-year statute of limitations.

However, the bankruptcy court made an accurate prediction of the effect of Proposition 64 on the validity of Plaintiffs' State court judgment.  As the bankruptcy court predicted, the California Supreme Court held that Proposition 64 applies to pending cases. Branick v. Downey Sav. and Loan Ass'n, 39 Cal. 4th 235, 240-41 (2006).  However, it held that Proposition 64 does not prohibit plaintiffs in pending UCL cases from substituting those actually harmed for unharmed plaintiffs suing on behalf of the general

9

public. Id. at 241. Rather, after Proposition 64, trial courts retain the discretion in UCL cases to permit a party to amend a pleading to add a party under the existing California relation-back doctrine, which requires only that new parties rely on the same general facts, injury, and instrumentality as did the original party. Id. at 242-44.

The State trial court, in ruling on Plaintiffs' motion to intervene, had the discretion to find that Plaintiffs' claims relied on the same general facts, injury, and instrumentality as did Ms. Wobogo's. Therefore, Plaintiffs' intervention was permissible under Branick, as the bankruptcy court had predicted it would be. Accordingly, the bankruptcy court did not abuse its discretion in attributing little settlement value to Appellant's State appeals to the extent they were based on this issue.

> B. Plaintiffs' Attorneys' Fees Judgment
>> 1. Necessity of Ms. Wobogo as a Plaintiff

Appellant argues that the bankruptcy court made an error of law in determining that Plaintiffs' attorneys' fees award would be upheld on appeal and thereby abused its discretion in approving the compromise. Appellant argues that without Ms. Wobogo as a plaintiff in the State case, there is no longer a valid judgment in that case. Therefore, he argues, the attorneys' fees award is not valid either.

However, as discussed above, Plaintiffs have been permissibly substituted for Ms. Wobogo. Therefore, the underlying judgment remains valid, as does the award of attorneys' fees. Accordingly, the bankruptcy court did not make an error of law on this point.

10

Furthermore, the attorneys' fees do not belong to Ms. Wobogo, as Appellant claims. Under California law, attorneys' fees are properly awarded to the plaintiffs' attorneys. Folsom v. Butte Co. Ass'n of Governments, 32 Cal. 3d 668, 682 n.26 (2001). Therefore, the bankruptcy court did not make an error of law in determining that the attorneys' fees associated with the underlying judgment were properly awarded. Accordingly, the bankruptcy court did not abuse its discretion in attributing little settlement value to Appellant's State civil appeals on this issue.

### 2. Work on Collateral Matters

Appellant also argues that Plaintiffs' attorneys' fees award impermissibly compensated the attorneys for work on collateral matters. Because of this error, he argues, the attorneys' fees award is subject to reversal on appeal.

The California court of appeal reviews attorneys' fees awards for abuse of discretion. Atkins v. Enterprise Rent-A-Car of San Francisco, 79 Cal. App. 4th 1127, 1134 (2000). As Appellant points out, California courts are permitted to award attorneys' fees for time spent on collateral matters when those matters are closely related and useful to the resolution of the matter at issue. Children's Hospital & Medical Center v. Bonta, 97 Cal. App. 4th 740, 779-80 (2002).

Appellant argues that the related civil and criminal cases for which Plaintiffs' attorneys worked and were awarded fees were not sufficiently related to Plaintiffs' case to justify an award of fees for the time spent on them. However, Appellant identifies no evidence in the record supporting his argument. Therefore, this

11

Court has no basis upon which to find that the bankruptcy court abused its discretion in attaching little settlement value to this argument.

Appellant also argues that the time spent by Plaintiffs' attorneys conducting real estate and litigation searches was unrelated to the result reached in the underlying litigation, rendering the attorneys' fees award subject to reversal on appeal. California law requires that the time spent conducting this type of work be related to the result reached in litigation. <u>Ciani v. San Diego Trust & Savings Bank</u>, 25 Cal. App. 4th 563, 575 (1994).

Had the attorneys not conducted these searches or placed liens on Appellant's property, Appellant might have transferred all of his valuable property to others. That would have made it difficult for Plaintiffs to receive the money from the judgement their attorneys helped them win. Therefore, this work was related to the result reached in the State case. Accordingly, the bankruptcy court did not abuse its discretion in affording little settlement value to this argument.

### 3. Fraud

Additionally, Appellant argues that Plaintiffs' attorneys committed fraud on the court when they represented to the temporary judge that they do not regularly practice in real estate law. However, Appellant does not cite any evidence in the record that this statement to the court was false. Furthermore, it was permissible for the attorneys to take this case despite the fact that they might have been unfamiliar with real estate law because, through education, they were able to achieve competence in real

12

estate law.  (Docket No. 25, Exh. AA at ¶¶ 111-113.)  Appellant also argues that attorneys' fees should not exceed one third of the monetary judgment but cites no authority for his argument. Therefore, the bankruptcy court did not abuse its discretion in affording these arguments little settlement value.

### C.   Other Grounds for Appeals

#### 1.   The Stipulation to a Temporary Judge in State Court

Appellant argues that the bankruptcy court abused its discretion in not attributing a greater settlement value to his State court appeal because he did not stipulate to allowing Plaintiffs to present their restitution claims to the temporary judge.  Because he did not agree to this procedure, Appellant argues, the underlying judgment is invalid and will be reversed on appeal.

However, the stipulation that Appellant signed granted the temporary judge the power to resolve all remaining issues, including issues related to restitution.  (Docket No. 25, Exh. A.) Accordingly, the bankruptcy court did not abuse its discretion in attributing little settlement value to the appeal based on this argument.

#### 2.   Due Process Claims

Appellant argues that the bankruptcy court abused its discretion in not attributing a greater settlement value to his State court appeals because the restitution hearings violated his rights to due process and protection of the California Evidence Code.  Because of these violations, he argues, the underlying State court judgment is invalid and will be reversed on appeal.

13

By failing to make a record of a proceeding, a party forfeits its right to argue on appeal that there was error at the proceeding. People v. Seneca Ins. Co., 116 Cal. App. 4th 75, 80 (2004). In the absence of a transcript of the hearings, the California court of appeal will presume that a trial court's orders and judgments are correct. Id. Appellant failed to make a record of the restitution hearings. Therefore, he forfeited his right to argue that the temporary judge erred in his evidentiary rulings or failed to afford Appellant due process. Accordingly, the bankruptcy court did not abuse its discretion in attributing little settlement value to this argument.

### 3. Pre-Judgment Interest

Appellant argues that the bankruptcy court abused its discretion in approving the compromise because the judgment included an impermissible award of pre-judgment interest. Specifically, Appellant argues that pre-judgment interest is not permitted on restitution awards in UCL cases. However, Appellant is incorrect. See People ex. rel. Kennedy v. Beaumont Investment, Ltd., 111 Cal. App. 4th 102, 132 (2003). Therefore, it is unlikely that this portion of the award would be reversed on appeal.

Appellant also argues that Plaintiffs' pre-judgment interest award was impermissible because Plaintiffs' damages were not liquidated as required by California law for pre-judgment interest. However, this argument is unlikely to prevail on appeal because Appellant did not preserve a record of the restitution hearings from which the California court of appeal could determine that Plaintiffs' damages were not liquidated. Therefore, the bankruptcy

14

court did not abuse its discretion in affording little settlement value to these arguments.

### 4. Post-Judgment Attorneys' Fees

Appellant argues that the compromise is not actually a compromise because it provides for payment of approximately $400,000 in post-judgment attorneys' fees that was not included in the State court attorneys' fees judgment. However, the compromise reduces the estate's payment towards the post-judgment attorneys' fees by $400,000.

Appellant presents no argument that the State trial court would not have approved the claimed post-judgment fees as reasonable or that the California court of appeal would have reversed such an award. The compromise actually reduced by half the principal amount of post-judgment fees claimed. In the absence of the compromise, Appellant's estate could become liable for the entire $800,000 in claimed post-judgment fees, plus the multiplier, in addition to the $3.9 million owed under the original attorneys' fees judgment. Therefore, the bankruptcy court did not abuse its discretion in approving a compromise containing a provision for payment of half of the claimed post-judgment fees.

### 5. Post-Judgment Interest

Appellant argues that the bankruptcy court abused its discretion in approving the compromise because the judgment included claims for post-judgment interest. He argues that this is impermissible under the June 16, 2004 stipulation by the parties to the State suit, approved by the State court, that provided that post-judgment interest would not accrue until the court had ruled

15

on Plaintiffs' motion for an award of attorneys' fees and costs and any motions brought for sanctions or a permanent injunction. Appellant argues that because Plaintiffs brought a motion for sanctions that was not ruled on, any award of post-judgment interest is invalid.[1]

However, it was not possible for the State court to rule on the sanctions motion because Appellant's bankruptcy filing stayed the State case. But for this stay, the State court would have timely ruled on the sanctions motions. The parties' stipulation sought only to toll briefly the accrual of post-judgment interest. Therefore, the bankruptcy court did not abuse its discretion in approving claims that included post-judgment interest.

## II. Delay and Expense

Appellant argues that the bankruptcy court wrongly determined that the delay and expense that would result from rejecting the compromise weighed in favor of approving the compromise. As previously discussed, the bankruptcy court correctly determined that there was a high probability that the Proposition 64 issues would be resolved in favor of intervention by Plaintiffs. Therefore, it was reasonable for the bankruptcy court to determine that the significant expense and delay associated with pursuing the appeals, on balance, weighed in favor of approving the compromise, to benefit all of the creditors of the estate. Accordingly, the

---

[1] This argument was raised for the first time in Appellant's reply memorandum, and neither the Trustee nor Plaintiffs have had an opportunity to respond. Indeed, Appellant did not raise this particular argument before the bankruptcy court. See Docket No. 25, Debtor's Objection to Trustee's Notice of Intent to Dismiss Appeals and Compromise with Creditors at 10-17.

16

bankruptcy court did not abuse its discretion in weighing this factor in favor of the compromise.

III. The Paramount Interest of Creditors

Appellant argues that the bankruptcy court wrongly determined that the interest of the creditors weighed in favor of approving the compromise. Specifically, Appellant argues that, had the bankruptcy court granted his motion to have his State civil appeals abandoned as property of the bankruptcy estate, he could have saved the estate the expense of prosecuting them.

A bankruptcy court may order a trustee to abandon any property of an estate that is burdensome to the estate or that is of inconsequential value to the estate. 11 U.S.C. § 554(b). However, the bankruptcy court here found no statutory basis for abandonment of the appeals. (Docket No. 28, Ruling on Trustee's Motion for Authority to Execute Proposed Settlement at 11.)

Prosecuting the appeals would be burdensome to the estate. However, not only did the compromise free the estate of that burden, it benefitted the estate by reducing Plaintiffs' original claim by $300,000, reducing the claim of post-judgment attorneys' fees by $400,000, paying the attorneys' fees award as an unsecured claim, and paying the multiplier portion of the award last. The estate could not have received these benefits had the Trustee abandoned the appeals to Appellant to prosecute, as Appellant requested. The burden of prosecuting the appeals was resolved by compromising them. Therefore, the bankruptcy court correctly found that there was no basis on which it could order the Trustee to abandon the appeals to Appellant to prosecute.

17

Additionally, Appellant contends that he offered to pay Plaintiffs' claims so that they would not be prejudiced by the delay associated with prosecution of his appeals. However, Appellant does not cite any evidence of this proposal in the record. Furthermore, such a proposal would not prevent prejudice resulting from delayed payment of the attorneys' fees portion of the award. Accordingly, the bankruptcy court did not abuse its discretion in resolving this factor in favor of the compromise.

## CONCLUSION

For the forgoing reasons, the order of the bankruptcy court is AFFIRMED.

IT IS SO ORDERED.

Dated: 10/23/06

CLAUDIA WILKEN
United States District Judge

Copies mailed to counsel
as noted on the following page

1 | **Julie Glosson**
2 | Office of U.S. Trustee
3 | 235 Pine St.
  | Suite 700
4 | San Francisco, CA 94105

5 |
6 | **Thomas E. Carlson**
  | United States Bankruptcy Court in San Francisco
7 | 235 Pine St.
  | P.O. Box 7341
8 | San Francisco, CA 94120-7341

9 |
10 | **U.S. Bankruptcy Manager**
   | U.S. Bankruptcy Court
11 | 235 Piine St.
   | P.O. Box 7341
12 | San Francisco, CA 94120-7341